# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROGRESSIVE WEST INSURANCE COMPANY,<br><br>                              Plaintiff,<br><br>  vs.<br><br>JONATHAN DALLO; MICHAEL DALLO; MONA DALLO; DALLO & CO., INC., and DOES 1 through 10, inclusive,<br><br>                              Defendants. | **CASE NO. 07CV1003 IEG (BLM)**<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. No. 8, 10, 11) |

Presently before the Court is Michael Dallo, Mona Dallo, & Dallo & Co., Inc.'s ("Defendant's") motion to dismiss. For the reasons set forth below, the Court DENIES Defendant's motion.

## BACKGROUND

**A.    Factual Background**

On June 28, 2006, Jonathan Dallo, adult son of Mona and Michael Dallo and an employee of Dallo & Co. Inc., was involved in a motor vehicle accident in which Jodi Burnett was killed. (FAC ¶ 11.) Burnett's husband and children pursued compensation, filing a lawsuit in San Diego Superior Court ("Burnett Lawsuit"). The Burnett Lawsuit, filed on October 11, 2006, alleged that Jonathan Dallo was driving a 2003 BMW 745 ("the BMW") at approximately 100 miles per hour, that he caused a fatal collision with Jodi Burnett, and that Jonathan Dallo, Michael Dallo, Mona Dallo, and

1 Dallo & Co., Inc., (collectively "Dallo Family")[1] were legally responsible for the death of the decedent
2 and all damages flowing therefrom. (See FAC ¶ 33, Ex. 13).

3     At the time of the accident, Michael Dallo had in force with Progressive West Insurance Co.
4 ("Plaintiff") a policy of automobile insurance ("the Policy"). The Policy listed Michael Dallo as the
5 named insured and Michael Dallo, Mona Dallo, and Jonathan Dallo as drivers and household
6 residents. (FAC ¶ 8.) While the Policy did not explicitly cover the BMW involved in the accident,
7 the Dallo Family insisted that because the actual owner of the vehicle was Dallo & Co., Inc., Jonathan
8 Dallo was "a relative using a non-owned vehicle with the expressed or implied permission of the
9 owner of the vehicle" and thus an "insured person" under the Policy. (FAC ¶ 34, Ex. 14.) In addition
10 to requesting coverage for Jonathan Dallo, the Dallo Family also requested that Plaintiff defend and
11 indemnify Michael and Mona Dallo for the negligent entrustment claims raised in the Burnett Lawsuit.
12

13     Three weeks after the Burnett Lawsuit was filed, on or about November 1, 2006, the attorney
14 for the Dallo Family, Dick Semerdjian, asked Plaintiff to defend and indemnify the Dallo Family and
15 also that it "immediately offer the policy limits to protect its insureds and settle this claim." (FAC ¶
16 34, Ex. 14.) Later, on November 27, 2006, Semerdjian, responding to an inquiry from Plaintiff,
17 advised that he would be representing defendants Michael Dallo, Mona Dallo, and Dallo & Co., Inc.,
18 and that another attorney, Ronson Shamoun, would be representing Jonathan Dallo. (FAC ¶ 36, Ex.
19 16.)

20     Plaintiff disputed coverage but agreed to provide a defense with a reservation of rights to
21 recover its indemnity payments. (FAC ¶ 37.) On or about December 6, 2006, Plaintiff sent a
22 reservation of rights letter to Defendants (i.e. Michael Dallo, Mona Dallo, and Dallo & Co., Inc.) care
23 of attorney Semerdjian. (FAC ¶ 38, Ex. 17.) The letter restated Plaintiff's coverage position, but
24 advised that a defense would be provided subject to a reservation of rights. The letter informed
25 Defendants that Plaintiff intended to file "a Declaratory Relief Action on the coverage issue and seek
26 reimbursement of attorney's fees and any indemnity funds disbursed pursuant to Blue Ridge Insurance

---

[1] The Court uses the term "Dallo Family" to refer to all the Dallos (mother, father, son, and the Dallo's company, Dallo & Co., Inc.) while the term "Defendants" refers to the movants with respect to this motion, i.e., the Dallo Family minus Jonathon Dallo.

1 Co. v. Jacobsen (2001) 25 Cal.4th 489." The letter noted that the defense of the Burnett Lawsuit would be assigned to the San Diego law firm of Winet, Patrick & Weaver (the "Winet firm"), and that Plaintiff would be contacting the Burnett's law firm to tender the full limits of the Policy. The letter closed with the statement "you have the right to consult with an attorney such as Mr. Semerdjian or any other of your own choosing, at your own expense, with respect to the issues raised in this letter." (FAC ¶ 38, Ex. 17.) On or about the same date, Plaintiff sent a similar letter to Jonathan Dallo, care of attorney Shamoun. (FAC ¶ 38, Ex. 18.)

On December 8, 2006, attorney Semerdjian wrote a letter to Plaintiff suggesting that all parties, including Uniguard, the commercial liability insurer of defendant Dallo & Co., Inc., attend a mediation. The letter indicated that Plaintiff should send someone with authority to deal with coverage issues and someone who could address potential professional negligence claims for which Plaintiff may be liable. (FAC ¶ 40, Ex. 19.) On January 9, 2007, a mediation session was held with all the relevant parties, including Plaintiff. (FAC ¶ 42.) At the mediation, both Plaintiff and Unigard Insurance Company offered the limits of coverage of their respective policies. However, the Burnett Lawsuit did not resolve on that date. (FAC ¶ 42.)

Following the first mediation session, on January 12, 2007, Defendants' attorney Semerdjian again sent a letter to Plaintiff requesting Plaintiff offer its full policy limits and also asking Plaintiff to do so without a reservation of rights. (FAC ¶ 43.) Semerdjian advised that, in his view, Plaintiff's reservation of the right to seek reimbursement under Blue Ridge Insurance Co. v. Jacobsen was "an act of bad faith." The letter concluded with the statement that:

> [T]he potential disastrous outcome of this case can still be avoided if Progressive recognizes its liability now and steps to the plate and tender [sic] its full coverage without a Blue Ridge reservation. Time is of the essence. We expect Progressive will act in its insureds' best interest and resolve this case immediately to avoid an excess personal verdict against the insureds."

(FAC ¶ 43, Ex. 21.) On January 19, 2007, Plaintiff replied, advising that while it would continue to offer its full policy limit in an effort to settle the Burnett Lawsuit, it would continue to defend the underlying lawsuit under a reservation of rights, including a right to seek reimbursement. Semerdjian responded by reiterating Defendants' demand that Plaintiff defend and settle the suit without such a reservation in subsequent letters on January 29, 2007, and February 13, 2007. (FAC ¶¶ 42, 46, 47.)

On March 13, 2007, a second mediation session took place. At that mediation, the Burnett Lawsuit resolved for $1,750,000. The First Amended Complaint ("FAC") in this case alleges that Plaintiff agreed to pay its full policy limits under the policy subject to a reservation of rights. (FAC ¶ 52.) On or around the same date, the Dallo Family signed a release and settlement agreement with the claimants in the Burnett Lawsuit. The release, attached as an exhibit to the FAC contained the following terms:

> Consideration. RELEASEES agree to pay RELEASORS ONE MILLION, SEVEN HUNDRED FIFTY THOUSAND DOLLARS AND NO/100 ($1,750,000.00), payable as follows:
>
> $1,000,000.00 on behalf of Michael Dallo, Mona Dallo, and Dallo and Company, Inc. to be paid by Uniguard Insurance Company;
>
> $ 250,000.00 to be paid by Dallo and Company, Inc.; and
>
> $ 500,000.00 *on behalf of Jonathan Dallo only* to be paid by Progressive West Insurance Company (Progressive).

(FAC, Ex. 29, at 139) (emphasis added). The FAC alleges that Plaintiff did not draft the release nor did it have any control over the language that was used in the agreement. (FAC ¶ 53.) Further the FAC alleges that at no time prior to the second mediation session was Plaintiff advised that Michael Dallo, Mona Dallo, and Dallo & Co., Inc., wanted to retract their demands for defense and indemnity under the Policy. (FAC ¶ 55.)

**B.   Procedural Background**

On June 1, 2007, Plaintiff filed the present complaint, asking for (1) a declaration that the Progressive Policy does not cover claims arising out of the accident in the Burnett Lawsuit, (FAC ¶¶ 56-59.); (2) a judgment for reimbursement from the Dallo Family of defense costs incurred during Plaintiff's defense of the Burnett Lawsuit, (FAC ¶¶ 60-62.); and (3) a judgment for reimbursement of the $500,000 paid to the Burnetts as part of the settlement agreement. (FAC ¶¶ 63-65.)

On August 8, 2007, Defendants filed the present motion, claiming that the Plaintiff's FAC fails to state a claim. In particular, Defendants identify two deficiencies in the Plaintiff's allegations:

(1) Defendants argue that the FAC does not state a claim for unjust enrichment against them because it does not contain an allegation that Plaintiff paid the $500,000 *on behalf of Defendants*. Rather, say Defendants, the FAC only contains the conclusory allegation that the Plaintiff is entitled

- 4 -

1  to reimbursement. Defendants urge the Court to consider the settlement agreement attached to the
2  FAC, which as discussed above, indicates that Plaintiff paid benefits *on behalf of Jonathan Dallo only*,
3  and not on behalf of Defendants.

4  (2) Defendants also argue that Plaintiff's allegations are insufficient to recover under a theory
5  of unjust enrichment because Plaintiff has not alleged that it fulfilled the prerequisites for obtaining
6  reimbursement outlined by the California Supreme Court in Blue Ridge Ins. Co. v. Jacobson, 25
7  Cal.45h 489 (2001). Specifically, Defendants assert that relief is unavailable because there is no
8  allegation in the FAC that Plaintiff: (1) notified Defendants of its intent to accept a proposed
9  settlement offer by the Burnett family and (2) thereafter offered Defendants the opportunity to take
10 over their own defense.

## LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. Proc. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). To survive a Rule 12(b)(6) motion, a complaint generally must satisfy only the minimal notice pleading requirements of Fed. R. Civ. Pro. 8(a)(2).[2] Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003). A court may dismiss a complaint for failure to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Navarro, 250 F.3d at 732 (citing Conley); see also Haddock v. Board of Dental Examiners, 777 F.2d 462, 464 (9th Cir.1985) (a court should not dismiss a complaint if it states a claim under any legal theory, even if plaintiff erroneously relies on a different theory). In other words, a Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

In deciding a motion to dismiss for failure to state a claim, the court's review is limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); Allarcom Pay Television, Ltd. v. General Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). The court must

---

[2] Rule 8(a)(2) requires only that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

- 5 -

1  accept all factual allegations pled in the complaint as true, and must construe them and draw all
2  reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co.,
3  80 F.3d 336, 337-38 (9th Cir.1996); Mier v. Owens, 57 F.3d 747, 750 (9th Cir.1995) (citing Usher v.
4  City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987).  In spite of the deference the court is bound
5  to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can
6  prove facts which [he or she] has not alleged." Associated General Contractors of California, Inc. v.
7  California State Council of Carpenters, 459 U.S. 519, 526 (1983).  Furthermore, a court is not required
8  to credit conclusory legal allegations cast in the form of factual allegations, unwarranted deductions
9  of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.
10  2001); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).
11       A court may dismiss a complaint without granting leave to amend only if it appears with
12  certainty that the plaintiff cannot state a claim and any amendment would be futile. See Fed. R. Civ.
13  P. 15(a) (leave to amend "shall be freely given when justice so requires"); DeSoto v. Yellow Freight
14  Systems, Inc., 957 F.2d 655, 658 (9th Cir.1992); Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir. 1988);
15  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("leave to
16  amend should be granted unless the court determines that the allegation of other facts consistent with
17  the challenged pleading could not possibly cure the deficiency").

## DISCUSSION

### A.  Does Plaintiff's FAC state a claim for unjust enrichment?

20       Defendants urge the Court to conclude that the exhibits offered in support of the FAC establish
21  that Plaintiff never paid any money on behalf of Defendants and thus that Plaintiff is not entitled to
22  recover on a theory of unjust enrichment from Defendants.  Defendants explain that, at the second
23  mediation, they disavowed all coverage under the Policy and took over their own defense and settled
24  directly with the Burnetts.  It was only after this settlement, say Defendants, that the Burnetts first
25  made a policy limits demand to Plaintiff.  That offer was to settle claims with respect to Jonathan
26  Dallo *only* for the sum of $500,000.  Defendants direct the Court to the language of the settlement
27  agreement produced during the second mediation and attached to the FAC.  In that document, the
28  parties state that Plaintiff's payment is "on behalf of Jonathan Dallo only." (FAC, Ex. 29, at 2.)  By

1  fulfilling it obligation under the settlement, i.e. paying clam money to the Burnetts, Plaintiff ratified
2  the agreement. As a result, Defendants argue that Plaintiff may only seek reimbursement from
3  Jonathan Dallo.

4  Plaintiff counters by arguing that Defendants' resort to the settlement agreement cannot defeat
5  its claim because the FAC alleges Plaintiff was not a party to the release and played no role in drafting
6  the release. Under these circumstances, Plaintiff argues, the agreement is only some evidence of the
7  terms of the settlement, not a conclusive statement. (Def. Opp., at 15 (citing FAC ¶ 53).)
8  Alternatively, Plaintiff agues that even if this Court takes the settlement agreement as a true reflection
9  of the terms emerging from the second mediation, several additional factors will have to be considered
10 before the Court may properly evaluate the unjust enrichment claim, including evidence regarding the
11 actual substance of the conversations at the second mediation and evidence as to whether Defendants
12 purposefully structured the mediation for the purpose of adversely affecting Plaintiff's right to
13 reimbursement.

14 **i.   Analysis**

15 When an insurer provides an insured a defense under a reservation of rights, and it is later
16 determined that the claims were not covered and the duty to defend never arose, the insurer is entitled
17 to reimbursement for costs advanced. Scottsdale Ins. Co. v. MV Transportation, 36 Cal.4th 643, 656
18 31(2005). Further, an insured may seek reimbursement for a reasonable settlement payment made
19 under a reservation of rights. See Blue Ridge, 25 Cal. 4th at 501-503. Reimbursement is available
20 in such cases because the insurer has not bargained to bear costs associated with an uncovered claim
21 and the insured has not paid the insurer premiums for the risk. Id. The "enrichment" of the insured
22 by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the
23 insurer's right under the policy to refuse payment for uncovered claims and is therefore deemed
24 "unjust." Id. Under the law of restitution, a right to reimbursement runs against the person who
25 benefits from unjust enrichment and in favor of the person who suffers loss thereby. Id.

26 The Court concludes that the FAC's allegation that Plaintiff paid the insurance money (FAC
27 ¶ 53) to settle the Burnett Lawsuit, when combined with Plaintiff's allegation that it is entitled to
28 reimbursement from Defendants (FAC ¶ 65), is an allegation that Defendants were unjustly enriched

by Plaintiff. This is true notwithstanding the FAC's lack of specificity as to on who's behalf the money was paid. A reasonable inference from the FAC's allegations is that Plaintiff's payment was essential to the settlement of the Burnett Lawsuit and the FAC makes a clear allegation that the entire Dallo Family, and not just Jonathan Dallo, vigorously sought such settlement. Accordingly, because Plaintiff's payment aided Defendants in acquiring a desired disposition of the Burnett Lawsuit (i.e. it enriched Defendants) and because Plaintiff alleges this payment was not required by the Policy (i.e. it was unjust), Plaintiff has made out a sufficient claim of unjust enrichment. The settlement agreement, while some evidence of the actual terms of the settlement agreement, cannot be regarded as conclusive proof of the parties' agreement, especially where Plaintiff has alleged that it had no control in drafting the document. Cf. In Re Marriage of Umphrey, 218 Cal.App.3d 647 (1990) (holding that documents filed alongside a pleading should not be regarded as conclusive proof of the facts contained therein; written settlement agreement did not conclusively determine the issue of when a couple had been separated, but was instead only a piece of evidence for the court to consider in deciding the equitable issues presented by the case).

**B.      Does the Blue Ridge decision foreclose Plaintiff's claim to indemnity?**

Defendants also allege that Plaintiff's FAC does not state a claim for restitution because the FAC fails to allege that Plaintiff meets the prerequisites for reimbursement outlined by the California Supreme Court in Blue Ridge.

In Blue Ridge, an insurance company was defending a dog mauling case under a reservation of rights on a homeowners insurance policy for claims arising out of the insureds' operation of a dog import business (an ostensibly excluded business pursuit). The insurer reserved its rights to deny coverage based on the applicable exclusion. The victims of the dog mauling made a policy limit demand. The insurer informed the insureds that it saw the offer as reasonable and intended to pay the policy limit to settle all claims against the insured and then seek reimbursement for the insured if the declaratory relief action resulted in a finding of no coverage. The insurer gave the insureds the opportunity to decline the settlement and assume their own defense. The insureds refused to undertake their own defense and refused to consent to the settlement unless the insurance company would enter into the settlement without a reservation of rights. The insureds simultaneously threatened a bad faith

lawsuit if the insurer did not settle. Ultimately, the insurer paid the $300,000 policy limit and pursued recovery from the insured. <u>Blue Ridge</u>, 25 Cal.4th at 493-94. The issue before the California Supreme Court in <u>Blue Ridge</u> was whether the insurer could seek reimbursement. The court concluded that it could, explaining that the insurer had satisfied the prerequisites for seeking reimbursement for noncovered claims under the circumstances by making:

> (1) a timely and express reservation of rights;
>
> (2) an express notification to the insureds of the insurer's intent to accept a purposed settlement offer; and
>
> (3) an express offer to the insureds that they may assume their own defense when the insurer and insureds disagree whether to accept the proposed settlement."

<u>Id.</u> at 503.

Defendants contend the FAC fails to allege satisfaction of both the second and third <u>Blue Ridge</u> prerequisites. Specifically, Defendants assert Plaintiff has not alleged that it waited for and received a policy limit demand from the Burnetts before it tendered an offer of a policy limits settlement—a violation of the second <u>Blue Ridge</u> prerequisite. Defendants do not allege they were given no notice of Plaintiff's intent to accept a policy limits settlement but rather allege a violation based on the second prerequisite's implied requirement that an insurer wait for a purposed settlement offer instead of making such an offer unilaterally. On the third prerequisite, Defendants argue the FAC fails to allege that Plaintiff made an express offer to the Dallo Family that the family assume its own defense. In sum, Defendants say that, under <u>Blue Ridge</u>, in order for Plaintiff to recover reimbursement, it must allege that it: (1) waited for a settlement offer within policy limits; (2) upon receiving a policy limits offer, expressly notified Defendants of their right and opportunity to take over their own defense; and then (3) waited for Defendants to refuse their right to self defense, while also objecting to the settlement, before settling the claim.

Plaintiff asserts that Defendants' argument ignores that, unlike the facts in <u>Blue Ridge</u>, there was no disagreement between the insurer and the insureds about the value of the injury claim, nor was there any objection by the insureds to the insurer's proposed payment of policy limits. Rather, all agreed that policy limits were appropriate and, indeed, Defendants demanded on several occasions that Plaintiff tender its limits of coverage. As such, there was no reason to wait for a policy limits

- 9 -

1 demand by the Burnetts or offer Defendants a chance to take over their own defense in the Burnett
2 Lawsuit. Under such circumstances, Plaintiff argues that the second and third <u>Blue Ridge</u>
3 prerequisites cannot and do not apply, and any failure of the FAC to allege these prerequisites does
4 not defeat Plaintiff's claim for reimbursement.

5       **a.**       **Analysis**

6       The court in <u>Blue Ridge</u> sought to ensure that an insurance company does not settle a case with
7 what will turn out to be the insured's own money, where the insurance company has not agreed with
8 the insured on the value of the underlying action. <u>See</u> <u>Blue Ridge</u>, 25 Cal.4th at 499. Defendants seek
9 to derive from <u>Blue Ridge</u> a requirement that the insurer wait for a proposed settlement offer and
10 provide formal notice regarding the right of the insurer to present its own defense in all cases
11 involving a reservation of rights, even where the insurer and insured expressly agree about both the
12 decision to settle a claim and the value of that claim and where the insured has made clear its intention
13 to seek reimbursement.

14       The Court concludes that the <u>Blue Ridge</u> does not impose the rigid requirements suggested by
15 Defendants. That is, <u>Blue Ridge</u> does not require an insured to wait for policy limits demand or make
16 an express offer to the insureds that they assume their own defense where the insurer and insured have
17 demonstrated their assent to settling an underlying case and have further agreed on the amount of
18 money appropriately applied to such settlement. The Court observes that under such circumstances,
19 an insured has no incentive to either delay offering a reasonable settlement or to take on his own
20 defense. The <u>Blue Ridge</u> court explicitly envisioned the distinction between the present case and the
21 very different factual situation with which it was presented when it framed the third prerequisite as
22 arising only in the context of a disagreement by the insurer and the insured on the subject of a
23 proposed settlement. <u>See</u> <u>Blue Ridge</u>, 25 Cal.4th at 502 (stating that a prerequisite for seeking
24 reimbursement of non-covered claims included in a reasonable settlement payment is "(3) an express
25 offer to the insureds that they may assume their own defense *when the insurer and insureds disagree*
26 *on whether to accept the proposed settlement*") (emphasis added). This language supports the view
27 that no express offer regarding an insured's assumption of his own defense is required where the
28 insurer and insured *do not* disagree on whether to accept the proposed settlement. <u>See</u> <u>id.</u> at 493

1  (explaining that the issue in the case was "[w]hether an insurer defending a personal injury suit under
2  a reservation of rights may recover settlement payments made *over the objection of the insured* . . .
3  .") (emphasis added). The Court concludes that it is similarly unnecessary to require an insurer to wait
4  for a policy limits demand from an underlying claimant where the insured has repeatedly demanded
5  that the insurer offer its policy limits in order to affect a prompt settlement of a claim.

6  In this case, the FAC alleges Plaintiff made a timely and express reservation of rights when
7  it informed Defendants on December 6, 2006 that it intended to file a "Declaratory Relief Action on
8  the coverage issue and seek reimbursement of attorney's fees and any indemnity funds disbursed
9  pursuant to Blue Ridge Insurance Co. v. Jacobsen (2001) 25 Cal.4th 489." (FAC ¶ 38, Ex. 17.) The
10 same letter informed Defendants that Plaintiff would be contacting the Burnett family to tender the
11 full limits of the Policy in an effort to settle the lawsuit. (Id.) Defendants did not protest the proposal
12 to offer policy limits. Indeed, subsequent to the December 6, 2005 letter from Plaintiff, the FAC
13 asserts that Semerdjian, on behalf of Defendants, encouraged Plaintiff to unilaterally offer its policy
14 limits by "tender[ing] full coverage without a Blue Ridge reservation" so as to "resolve this case
15 immediately [and] avoid an excess personal verdict against the insureds." (FAC ¶ 43, Ex. 21.)
16 Notably, this second communication from Semerdjian makes clear Defendants' view that the Burnett
17 Lawsuit was worth in excess of the $500,000 limit of the Policy. (See id., explaining the need to
18 utilize funds from both the Uniguard and Progressive policies as well as Dallo Family personal funds
19 to settle Burnett Lawsuit.) The FAC further alleges that at no time prior to the second mediation did
20 Defendants withdraw these demands. (FAC ¶ 55.)

21 In sum, the FAC asserts that Defendants assented to the reasonableness and desirability of a
22 policy limits settlement and declined to pursue their own defense. Cf. Blue Ridge, 489 Cal.4th at 501
23 ("Through reservation, the insurer gives the insured notice of how [the insurer] will, or at least may,
24 proceed and thereby provides [the insured] an opportunity to take any steps that it may deem
25 reasonable or necessary in response-including whether to accept defense at the insurer's hands and
26 under the insurer's control or, instead, to defend itself as it chooses.") (alternations in original)
27 (quoting Buss v. Superior Court, 16 Cal.4th 35, 61, n.27 (1997))). Under such circumstances, and
28 unlike the situation in Blue Ridge, no danger existed that the insurer was offering what would

ultimately be Defendants money to fund an unreasonable and undesired settlement.  Accordingly, the Court concludes that neither an express notification of Plaintiff's intent to accept a policy limits settlement nor a specific offer by Plaintiff to Defendants that Defendants maintain their own defense was necessary for Plaintiff to preserve its reservation of rights.  Plaintiff's failure to explicitly allege these facts does not foreclose its claim for reimbursement under a theory of unjust enrichment.

## **CONCLUSION**

Based on the foregoing, the Court **DENIES** the Defendant's motion to dismiss.

**IT IS SO ORDERED.**

**DATED:  October 30, 2007**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**
**Southern District of California**