# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROGRESSIVE WEST INSURANCE COMPANY,<br><br>                Plaintiff/Counterdefendant,<br>   vs.<br><br>JONATHAN DALLO; MICHAEL DALLO; MONA DALLO; DALLO & CO., INC., and DOES 1 through 10, inclusive,<br><br>                Defendants/Counterclaimants. | **CASE NO. 07CV1003 IEG (BLM)**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS**<br><br>(Doc. No. 17, 18, 23, 26) |

Presently before the Court is Plaintiff's motion to dismiss Defendants' counterclaims. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

## **BACKGROUND**

**A.   Factual Background**

On June 28, 2006, Jonathan Dallo, adult son of Mona and Michael Dallo, while driving a BMW vehicle, was involved in a motor vehicle accident in which Jodi Burnett was killed. (Counterclaimants' Counterclaims Complaint ("Counter-Complaint") ¶ 11.) Burnett's husband and family pursued compensation, filing a lawsuit in San Diego Superior Court ("Burnett Lawsuit") which asserted claims against Jonathan Dallo, Michael Dallo, Mona Dallo, and Dallo & Co., Inc., (collectively "Dallo Family").[1] (See Counter-Complaint ¶ 12.)

---

[1] The Court uses the term "Dallo Family" to refer to all the Dallos (mother, father, son, and the Dallo's company, Dallo & Co., Inc.) while the term "Counterclaimants" refers to the Dallo Family minus Jonathan Dallo.

- 1 -

1    At the time of the accident, Michael Dallo had in force with Plaintiff Progressive West
2 Insurance Co. ("Progressive") a policy of automobile insurance ("the Policy"). The Policy provided
3 $500,000 in personal injury liability coverage. (See Counter-Complaint ¶ 10.) The Counter-
4 Complaint makes no specific reference to the Policy's provisions nor does it make any allegation that
5 the BMW driven by Jonathan Dallo on the night of the accident is covered by the express terms of the
6 policy.

7    Michael Dallo, Mona Dallo, and Dallo & Co., Inc.'s ("Counterclaimants'") Counter-Complaint
8 alleges that after tendering claims related to the Burnett Lawsuit to Progressive—a claim "clearly
9 covered by the policy"—Progressive initially denied coverage. (Counter-Complaint ¶¶ 13, 40.) The
10 Counter-Complaint goes on to allege Progressive eventually agreed to defend the Dallo Family after
11 the Dallo Family retained counsel to represent them and counsel re-tendered the claims to Progressive
12 with additional information. (Counter-Complaint ¶ 14.) The Counter-Complaint further alleges that
13 while agreeing to undertake defense obligations, Progressive reserved its rights to recoup its defense
14 costs and any indemnity payment based on its position that Jonathan Dallo's use of the BMW vehicle
15 was not covered by the Policy and despite numerous requests by Counterclaimants that Progressive
16 tender its policy limits without a reservation. (Counter-Complaint ¶¶ 14, 21.)

17    The Counter-Complaint alleges that despite Progressive's agreement to provide a defense for
18 Jonathan Dallo and Counterclaimants and its retention of a lawyer for the Dallo Family, Progressive
19 never actually undertook Counterclaimants' defense since a conflict of interest between Jonathan
20 Dallo and Counterclaimants precluded joint representation. The Counter-Complaint acknowledges
21 separate counsel was eventually secured for Jonathan Dallo on the one hand and Counterclaimants on
22 the other. However, and without specifically identifying the counsel to which it is referring, the
23 Counter-Complaint alleges "counsel never took over the defense in a substantive way." (Counter-
24 Complaint ¶ 23.) Further, again without specifying the counsel being referenced, the Counter-
25 Complaint alleges counsel provided by Progressive was not independent, as required by the
26 circumstances. (See Counter-Complaint ¶ 23.)

27    The Counter-Complaint goes on to allege Progressive offered its policy limits to the Burnett
28 Lawsuit plaintiffs pursuant to its reservation of rights without first conferring with Counterclaimants

about the best way to approach the defense of the case or waiting for a policy limits demand. (Counter-Complaint ¶ 16.)

After a second mediation between the Dallo Family, the Burnett Lawsuit plaintiffs and the Dallo Family's insurers, the Burnett Lawsuit settled. The Counter-Complaint alleges Counterclaimants explicitly abandoned all coverage under the Progressive policy and used their own funds along with funds from another insurer to settle all claims asserted against them in the Burnett Lawsuit. (Counter-Complaint ¶ 25.) The Counter-Complaint further asserts Progressive was informed of Counterclaimants' abandonment of coverage and that, thereafter, plaintiffs in the Burnett Lawsuit made a policy limits offer to Progressive to settle their claims against Jonathan Dallo only, which Progressive accepted. (Counter-Complaint ¶ 26.) Pursuant to the settlement agreement, Progressive paid its $500,000 policy limits on behalf of Jonathan Dallo only, while Counterclaimants paid $250,000 of their own funds on their own behalf. (Counter-Complaint ¶ 33-34).

**B.     Procedural Background**

On July 16, 2007, Progressive filed its First Amended Complaint ("FAC"), asking for (1) a declaration that the Policy does not cover claims arising out of the accident in the Burnett Lawsuit; (2) a judgment for reimbursement from the Dallo Family of defense costs incurred during Progressive's defense of the Burnett Lawsuit; and (3) a judgment for reimbursement of the $500,000 paid to the Burnetts Lawsuit plaintiffs as part of the settlement agreement. (Doc. No. 6.) On August 8, 2007, Counterclaimants filed a motion to dismiss, arguing Progressive's FAC fails to state a claim because it fails to allege Progressive paid policy benefits on behalf of Counterclaimants[2] and that Progressive fails to allege it fulfilled the prerequisites for obtaining reimbursement outlined by the California Supreme Court in Blue Ridge Ins. Co. v. Jacobson, 25 Cal. App. 4th 489 (2001). In an October 30, 2007 Order, this Court rejected Counterclaimants' argument and denied the motion. (Doc. No. 14.)

On November 9, 2007, Counterclaimants filed counterclaims against Progressive, asking for a declaration regarding the rights and duties under the Policy and asserting causes of action for (1) breach of contract, (2) bad faith, and (3) intentional infliction of emotional distress. (Doc. No. 17.).

---

[2]Counterclaimants claimed the FAC alleges a payment only on behalf of Jonathan Dallo.

- 3 -

1  On November 29, 2007, Progressive filed a motion to dismiss, alleging Counterclaimants could not
2  state a claim for these various actions because Progressive paid all benefits due under the Policy.
3  (Doc. No. 18.) Counterclaimants filed an opposition on January 8, 2008. (Doc. No. 23). Progressive
4  replied on January 14, 2008. (Doc. 26.)

5  The Court finds the matter fully briefed and amenable for disposition without oral argument
6  pursuant to Local Rule 7.1(d)(1).

## LEGAL STANDARD

8  A motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) tests the legal sufficiency of the
9  claims asserted in the complaint. Fed. R. Civ. Proc. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731
10 (9th Cir. 2001). To survive a Rule 12(b)(6) motion, a complaint generally must satisfy only the
11 minimal notice pleading requirements of Fed. R. Civ. Pro. 8(a)(2).[3] Porter v. Jones, 319 F.3d 483, 494
12 (9th Cir. 2003). A court may dismiss a complaint for failure to state a claim when "it appears beyond
13 doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to
14 relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Navarro, 250 F.3d at 732 (citing Conley); see
15 also Haddock v. Board of Dental Examiners, 777 F.2d 462, 464 (9th Cir.1985) (a court should not
16 dismiss a complaint if it states a claim under any legal theory, even if plaintiff erroneously relies on
17 a different theory). In other words, a Rule 12(b)(6) dismissal is proper only where there is either a
18 "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal
19 theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

20 In deciding a motion to dismiss for failure to state a claim, the court's review is limited to the
21 contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); Allarcom
22 Pay Television, Ltd. v. General Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). The court must
23 accept all factual allegations pled in the complaint as true, and must construe them and draw all
24 reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co.,
25 80 F.3d 336, 337-38 (9th Cir.1996); Mier v. Owens, 57 F.3d 747, 750 (9th Cir.1995) (citing Usher v.
26 City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987). In spite of the deference the court is bound

---

[3] Rule 8(a)(2) requires only that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

- 4 -

1  to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can
2  prove facts which [he or she] has not alleged." Associated General Contractors of California, Inc. v.
3  California State Council of Carpenters, 459 U.S. 519, 526 (1983). Furthermore, a court is not required
4  to credit conclusory legal allegations cast in the form of factual allegations, unwarranted deductions
5  of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.
6  2001); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).

7       A court may dismiss a complaint without granting leave to amend only if it appears with
8  certainty that the plaintiff cannot state a claim and any amendment would be futile. See Fed. R. Civ.
9  P. 15(a) (leave to amend "shall be freely given when justice so requires"); DeSoto v. Yellow Freight
10 Systems, Inc., 957 F.2d 655, 658 (9th Cir.1992); Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir. 1988);
11 Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("leave to
12 amend should be granted unless the court determines that the allegation of other facts consistent with
13 the challenged pleading could not possibly cure the deficiency").

14 **DISCUSSION**

15 **I.    Contract Claim**

16      The elements of a cause of action for breach of contract are: "(1) The contract; (2) Plaintiff's
17 performance; (3) Defendant's breach; (4) Damage to plaintiff." McDonald v. John P. Scripps
18 Newspaper, 210 Cal. App. 3d 100, 104 (1989). The parties' dispute centers on whether Counter-
19 Claimant's allegations regarding Progressive's claims handling sufficiently alleges breach of the
20 insurance contract either directly or by way of a violation of the covenant of good faith and fair
21 dealing.

22      The Counter-Complaint asserts Progressive directly breached the Policy in the following ways:
23 (1) Progressive failed to acknowledge coverage owed under the policy; (2) Progressive failed to
24 diligently investigate the claims and coverage facts arising from the accident, (3) Progressive failed
25 to pay a covered claim without a reservation of rights, and (4) Progressive failed to provide defense
26 counsel. (Counter-Complaint ¶ 40.) Progressive counters, pointing out there is no dispute Progressive
27 picked up the defense of the Burnett Lawsuit under a reservation of rights, hired counsel to defend the
28 Dallo Family, and paid the full limits of coverage under the Policy to settle the claim. Under the

circumstances, argues Progressive, there has been no withholding of policy benefits, unreasonable or otherwise, that would give rise to a cause of action for breach of contract, bad faith, or intentional infliction of emotional distress. Progressive cites <u>Progressive West Ins. Co. v. Superior Court ("Preciado")</u>, 135 Cal. App. 4th 263, 277-79 (2005) in support of the proposition that no contract or tort liability may arise from an insurer's pursuit of reimbursement for defense and indemnity benefits it claims were never due.

The Court concludes the Counter-Complaints' allegations fail to state a claim for breach of contract either because they are not precise enough to allege violations of specific contractual provisions or because they are directly contradicted by other parts of the Counter-Complaint.

With respect to the first allegation, in which the Counter-Complaint says Progressive failed to acknowledge coverage owed under the Policy, the Counter-Complaint concedes Progressive provided a defense under a reservation of rights—thereby acknowledging the insurance relationship and the potential for coverage under the Policy. There is no allegation that such a qualified defense was foreclosed by the terms of the Policy. Similarly, with respect to the third allegation, which states Progressive refused to pay a claim covered by the policy without a reservation of rights, the Counter-Complaint obviously concedes a qualified payment (under a reservation of rights) was made and makes no allegation that such a qualified payment of settlement violates any terms of the parties' agreement. Such action on the part of an insurer is sanctioned under California law. See <u>Blue Ridge Ins. Co. v. Jacobsen,</u> 25 Cal. 4th 489 (2001). With respect to the fourth allegation, Progressive's failure to provide defense counsel, the Counter-Complaint acknowledges defense counsel was in fact secured.

To the extent Counterclaimants base their claim on a lack of diligence on the part of Progressive in investigating the coverage issue associated with the claim and/or retaining separate counsel for the Counterclaimants, the Court finds insufficient support for these legal conclusions. The Counter-Complaint implies Progressive promptly acknowledged potential coverage and offered a qualified defense upon being provided with "additional information" by Counterclaimants' retained counsel. (Counter-Complaint ¶ 14.) The Counter-Complaint does not allege Progressive's initial position (i.e. before it received the "additional information" from the Dallo Family's counsel) was

unreasonable. Further, while Counterclaimants allege they were initially forced to accept joint representation, they concede separate counsel was provided shortly before the second mediation and there is no allegation that this time frame was unreasonable. (Counter-Complaint ¶ 23.)[4]  Finally, Counterclaimants fail to plead any provision of the contract which sets forth a timetable or otherwise describes the mechanism for coverage decisions which supports an inference that Progressive's handling of the claim lacked diligence.

Under the circumstances, Counterclaimants have failed to state a claim for breach of contract and, accordingly, the Court **GRANTS** Progressive's motion to dismiss Counterclaimants' breach of contract claim.

### 2. Bad Faith

There are at least two separate requirements to establish breach of the implied covenant of good faith and fair dealing (or more simply bad faith): (1) benefits due under an insurance policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause. Preciado, 135 CalApp.4th at 446-47.

With respect to the bad faith claim, the Counter-Complaint alleges Progressive (1) put its own interests ahead of its insureds'; (2) failed to properly engage its insureds in a dialogue about coverage; (3) acknowledged Counterclaimants disavowal of coverage while secretly harboring the intent to seek payment from Counterclaimants; (4) failed to distinguish between the differing situations of its differently situated insureds; (5) denied coverage when it was reasonably clear under the policy language; (6) offered policy limits under reservation of rights without first considering the interests of its insureds. (Counter-Complaint ¶ 46-47.)

The first four allegations do not amount to a contention that insurance policy benefits were unreasonably withheld. With respect to the final two allegations, just as Progressive's reservation of rights does not constitute a breach of contract, the Court rejects Counterclaimants' implied assertion that Progressive's failure to pay without a reservation of rights supports a bad faith claim. Accordingly, the Counter-Complaint fails to allege Progressive withheld benefits due under the policy.

---

[4] Counterclaimants also allege Progressive resisted providing "independent" counsel for months, however, Counterclaimants make no specific allegations demonstrating "independent" counsel was required under the Policy or by law.

- 7 -

1    Again, to the extent Counterclaimants claim is based on Progressive's failure to diligently
2 acknowledge and take on defense and indemnity obligations, the Court finds the Counter-Complaint's
3 allegations insufficient. Beyond the mere characterization of Progressive's conduct as lacking
4 diligence, Counterclaimants make no specific allegations demonstrating Progressive's performance
5 was unreasonable or otherwise without proper cause. Instead, the Counter-Complaint indicates the
6 challenged claim was subject to a good faith dispute regarding coverage. See Counter-Complaint ¶
7 15 (explaining Progressive's position that Jonathan Dallo's use of the BMW vehicle resulted in no
8 coverage because the BMW was not covered by the policy). As discussed above, the Counter-
9 Complaint makes clear Progressive acknowledged potential coverage and offered a qualified defense
10 after Counterclaimants re-tendered their claims to Progressive through counsel with additional
11 information. There is no allegation Progressive did not, at that point, provide a timely qualified
12 defense. Indeed, Counterclaimants' sixth allegation, concerning a premature offer of policy limits,
13 belies any suggestion that Progressive unduly delayed offering a defense and indemnification to
14 Counterclaimants. Further, there is no allegation that Progressive's position regarding coverage prior
15 to receiving this "additional information" was unreasonable. While Counterclaimants assert coverage
16 was "reasonably clear," this conclusory statement is unsupported by any specific allegations or any
17 reference to the specific provisions of the Policy which impact the coverage determination.

18    Because the Counter-Complaint fails to allege Progressive withheld a specific benefit under
19 the Policy based on an unreasonable or improper cause, the Court **GRANTS** Plaintiff's motion to
20 dismiss Counterclaimants' bad faith claim.

21 **3.     Intentional Infliction of Emotional Distress**

22    The elements of a prima facie case for the tort of intentional infliction of emotional distress
23 are: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless
24 disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or
25 extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the
26 defendant's outrageous conduct. Ross v. Creel Printing & Publishing Co., 100 Cal. App. 4th 736,
27 744-45 (2002). To support a claim for intentional infliction of emotional distress against an insurer,
28 the plaintiff must allege conduct exceeding all bounds usually tolerated by a decent society especially

calculated to cause mental distress of a very serious kind. <u>Christensen v. Superior Court</u>, 54 Cal. 3d 868, 904-05 (1991). Mere "delay or denial of insurance claims is not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress." <u>Coleman v. Republic Indem. Ins. Co.</u>, 132 Cal. App. 4th 403, 417 (2005). Behavior may be considered outrageous if a defendant: (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress. <u>Hailey v. California Physicians' Service</u>, 158 Cal. App. 4th 452, 474 (2007).

Michael and Mona Dallo premise their claim on allegations Progressive (1) failed to properly analyze coverage; (2) refused to address the differences in equities between Counterclaimants and Jonathan Dallo; (3) failed to advise Counterclaimants of their right to withdraw from coverage; (4) failed to provide defense counsel; (5) withheld defense counsel in hopes of tricking Counterclaimants into making statements which Progressive could use against them in subsequent coverage litigation; (6) leveraged and used Michael and Mona Dallo's love for their son; (7) acknowledged Counterclaimants had abandoned coverage and remained silent until Counterclaimants had paid $250,000 and ratified the settlement before announcing Progressive's position that Counterclaimants' owed Progressive a refund of $500,000. Counterclaimants allege "severe emotional distress" as a result of this Conduct. (Counter-Complaint at ¶ 53.)

In light of the Court's finding that Counterclaimants have not stated a case for breach of contract or bad faith, the Court concludes Michael and Mona Dallo cannot meet the outrageousness prong required to state a claim for intentional infliction of emotional distress. As discussed further above, the allegations of the Counter-Complaint, including those cited in support of the intentional infliction of emotional distress claim, at most indicate that coverage benefits were delayed and/or delivered conditionally. The Counterclaimants have cited no authority demonstrating such conduct qualifies as sufficiently outrageous to support their claim. Accordingly, the Plaintiff's motion to dismiss Michael and Mona Dallo's intentional infliction of emotional distress claim is **GRANTED**.

//

## **CONCLUSION**

Based on the foregoing, the Court **GRANTS** Plaintiff's motion to dismiss Counterclaimants' causes of action for breach of contract, bad faith, and intentional infliction of emotional distress.

Because the Court concludes allegations of other facts consistent with the Counter-Complaint could possibly cure the deficiencies, the Court **GRANTS** Counterclaimants leave to amend their Counter-Complaint. Counterclaimants may file an amended complaint addressing the deficiencies set forth above, no later than 14 days from the date this order is filed.

**IT IS SO ORDERED.**

**DATED: February 14, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**