| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PROGRESSIVE WEST INSURANCE COMPANY, | | CASE NO. 07cv1003 IEG (AJB) |
| Plaintiff, | | ORDER DENYING IN PART AND GRANTING IN PART THE PLAINTIFF'S MOTIONS TO PARTIALLY DISMISS (1) MICHAEL DALLO, MONA DALLO, AND DALLO & CO., INC.'S SECOND AMENDED COUNTERCLAIM AND (2) JONATHAN DALLO'S COUNTERCLAIM |
| vs. | | |
| JONATHAN DALLO; MICHAEL DALLO; MONA DALLO; DALLO & CO., INC., | | |
| Defendant. | | |
| JONATHAN DALLO; MICHAEL DALLO; MONA DALLO; and DALLO & CO., INC., | | |
| Counterclaimants, | | |
| vs. | | |
| PROGRESSIVE WEST INSURANCE COMPANY; MICHAEL KENNEDY, KENNEDY INSURANCE AGENCY, INC., | | |
| Counterdefendants. | | |

Presently before the Court is Plaintiff's motions to partially dismiss (1) the Counterclaim of defendant Jonathan Dallo ("Jonathan") and (2) the Second Amended Counterclaim of defendants Michael Dallo, Mona Dallo, and Dallo & Co., Inc. (collectively "Dallo Co. and Parents"). For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motions.

# Background

## I. Factual Background

Sometime during 2000 or 2001, Dallo & Co., Inc. began using Michael Kennedy and Kennedy Insurance Agency Inc. ("Kennedy Insurance") for its insurance needs. (Second Am. Countercl. ¶ 12) ("SACC"). As of late 2005, the vehicles driven by Michael, Mona and Jonathan Dallo were insured under a Unigard fleet policy, as arranged by Kennedy Insurance. Id. at ¶ 17. In late 2005, Kennedy Insurance had all commercial liability and automobile insurance for Dallo & Co., Inc. placed with Unigard Insurance Company. Id. at ¶ 18. However, in early January 2006, Kennedy Insurance informed Dallo & Co., Inc. that, in order to maintain its coverage, Jonathan would have to be excluded from the policy. Id. at ¶¶ 18, 19. Michael Kennedy told Michael Dallo that Jonathan would need to obtain substitute insurance, but assured Michael Dallo that Kennedy Insurance would obtain appropriate coverage for Jonathan. Michael Kennedy asked Michael Dallo to designate which car he believed Jonathan was most likely to drive. Michael Kennedy chose to have the vehicles insured under a policy of automobile insurance ("the Policy") with Plaintiff Progressive West Insurance Co. ("Progressive"). The Policy provided $500,000 in personal injury liability coverage. Id. at ¶ 35. Under the policy, Progressive promised to "pay damages . . . for bodily injury for which an insured person becomes legally responsible because of an accident arising out of the ownership, maintenance, or use of the vehicle." Id. at ¶ 37.

On June 28, 2006, Jonathan Dallo, the adult son of Mona and Michael Dallo, was involved in a motor vehicle accident that resulted in the death of Jodi Burnett. (SACC ¶ 24.) Burnett's husband and family filed a lawsuit in San Diego Superior Court ("Burnett Lawsuit"), asserting claims against Jonathan Dallo, Michael Dallo, Mona Dallo, and Dallo & Co., Inc. (collectively "Counterclaimants"). (SACC ¶ 44.)

The Counterclaimants allege they properly tendered their claims related to the Burnett Lawsuit, but Progressive initially denied coverage. (SACC ¶ 41.) Progressive allegedly denied the claim without conducting an "appropriate investigation"; Progressive failed to take statements from the Counterclaimants and did not await answers to questions already posed to the Counterclaimants. After counsel for Dallo Co. and Parents re-tendered the claim to Progressive with additional information,

Progressive agreed to defend all the Counterclaimants. (SACC ¶ 14.) Progressive undertook this defense under a reservation of Progressive's rights to recoup its defense costs and any indemnity payment based on its position that the Policy did not cover Jonathan Dallo's use of the BMW vehicle he was driving at the time of the accident. (SACC ¶¶ 14, 21.)

The SACC alleges that despite Progressive's agreement to provide a defense for all the Counterclaimants, Progressive never actually undertook the defense of Dallo Co. and Parents because Dallo Co. and Parents had a conflict of interest with Jonathan that precluded joint representation. At the first mediation session of the Burnett Lawsuit, Dallo Co. and Parents allege they were not represented by independent counsel. (SACC ¶¶ 62- 70.) However, Dallo Co. and Parents acknowledge that separate counsel appeared for Jonathan at the second mediation session. Furthermore, Progressive eventually secured separate counsel for Dallo & Co., Inc. (Kimberly Oberrecht) and Michael and Mona Dallo (David Peck) shortly before the second mediation session. However, "counsel never took over the defense in a substantive way." (SACC ¶ 72.) Dallo & Co., Inc. rejected Ms. Oberrecht's representation at the second mediation. Michael and Mona Dallo rejected the representation of Mr. Peck because they did not want to jeopardize their rights to the larger Unigard insurance policy. (See SACC ¶ 77.) Accordingly, Dallo Co. and Parents "severed" their ties with Jonathan and Progressive and made an independent settlement with the Burnetts under the Unigard policy, using $1,000,000 from the policy and $250,000 from their own funds.

The Burnett Lawsuit against Jonathan settled after the second mediation. Progressive allegedly knew Dallo Co. and Parents had abandoned coverage and accepted an offer to settle the Burnett claims against Jonathan for the Policy limit. (SACC ¶ 78.) Pursuant to the settlement agreement, Progressive paid its $500,000 policy limit on behalf of Jonathan only.

**II.     Procedural Background**

On July 16, 2007, Progressive filed its First Amended Complaint asking for (1) a declaration that the Policy does not cover claims arising out of the accident in the Burnett Lawsuit; (2) a judgment for reimbursement from the Counterclaimants of defense costs incurred during Progressive's defense of the Burnett Lawsuit; and (3) a judgment for reimbursement of the $500,000 paid to the Burnett Lawsuit plaintiffs as part of the settlement agreement. (Doc. No. 6.) On August 8, 2007, Dallo Co.

1  and Parents filed a motion to dismiss. In an October 30, 2007 Order, this Court rejected the argument
2  of Dallo Co. and Parents and denied the motion. (Doc. No. 14.)

3  On November 9, 2007, Dallo Co. and Parents filed counterclaims against Progressive, asking
4  for a declaration regarding the rights and duties under the Policy and asserting causes of action for (1)
5  breach of contract, (2) bad faith, and (3) intentional infliction of emotional distress. (Doc. No. 17.)
6  On November 29, 2007, Progressive filed a motion to dismiss, alleging Dallo Co. and Parents failed
7  to state a claim for these various actions because Progressive paid all benefits due under the Policy.
8  (Doc. No. 18.) The Court granted Progressive's motion to dismiss with leave to amend. (Doc. No.
9  29.)

10 On February 28, 2008, Dallo Co. and Parents filed their First Amended Counterclaim. (Doc.
11 No. 31.) However, on March 18, 2008, Dallo Co. and Parents filed a motion to modify the case
12 management conference order and to allow them to file their Second Amended Counterclaim. (Doc.
13 No. 32.) Jonathan filed an accompanying motion for joinder and leave to file a counterclaim. (Doc.
14 No. 34.) Progressive filed opposition to both motions. (Doc. Nos. 37, 38.) The Court granted both
15 Dallo Co. and Parents' motion and Jonathan's motion. (Doc. No. 46.)

16 Pursuant to that order, Dallo Co. and Parents filed their Second Amended Counterclaim on
17 May 29, 2008, alleging (1) negligence, (2) misrepresentation, (3) breach of an oral contract, (4)
18 reformation, (5) declaratory relief, (6) breach of contract, (7) bad faith breach of an insurance contract,
19 and (8) violation of California Business and Professions Code Section 17200, et seq. (Doc. No. 47.)
20 Jonathan filed his Counterclaim for (1) negligence, (2) misrepresentation, (3) breach of an oral
21 contract, (4) reformation, (5) declaratory relief, and (6) breach of contract on June 6, 2008. (Doc. No.
22 49.)

23 Progressive has filed a motion to dismiss counts (6), (7), and (8) of Dallo Co. and Parents'
24 Second Amended Counterclaim pursuant to Fed. R. Civ. P. Rule 12(b)(6). (Doc. No. 57.) Progressive
25 also filed a motion to dismiss count (6) of Jonathan's counterclaim pursuant to Fed. R. Civ. P.
26 12(b)(6). (Doc. No. 56.) Dallo Co. and Parents opposed the motion (Doc. No. 66) as did Jonathan
27 (Doc. No. 65). Progressive filed its reply on August 29, 2008. (Doc. No. 70.)

28 The Court found the matter fully briefed and amenable for disposition without oral argument

1  pursuant to Local Rule 7.1(d)(1) and the hearing date was vacated.

## Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1974 (2007).

In deciding a motion to dismiss for failure to state a claim, the court's review is limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); Allarcom Pay Television, Ltd. v. General Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996); Mier v. Owens, 57 F.3d 747, 750 (9th Cir.1995) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). Furthermore, a court is not required to credit conclusory legal allegations cast in the form of factual allegations, unwarranted deductions of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).

A court may dismiss a complaint without granting leave to amend only if it appears with certainty that the plaintiff cannot state a claim and any amendment would be futile. See Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); DeSoto v. Yellow Freight Systems, Inc., 957 F.2d 655, 658 (9th Cir.1992); Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir. 1988); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

## DISCUSSION

**I. Scope of the Leave to Amend**

    i.      Parties' Arguments

Progressive argues Dallo Co. and Parents exceeded the limitations of the scope of permissible amendments set forth in the Court's Order Granting the Plaintiff's Motion to Dismiss. (Doc. No. 29.) In that order, argues Progressive, the Court only granted leave to amend to "address[ ] the deficiencies set forth above. . . ." (Doc. No. 29, 10:4-7.) Progressive argues any amendments that do not specifically address deficiencies raised in that order are, therefore, beyond the scope of the order and improper. Progressive applies this argument to the breach of contract claim, the bad faith breach of contract claim, the intentional infliction of emotional distress claim, and the California Business and Profession Code section 17200 claim.

Dallo Co. and Parents argue the limitations in the Court's Order Granting the Plaintiff's Motion to Dismiss but Allowing Leave to Amend were superceded by the Court's subsequent order granting Dallo Co. and Parents leave to amend the Second Amended Counterclaim.

    ii.      Analysis

Progressive's argument misinterprets the record. The order Progressive relies upon, in fact, permits only amendments designed to correct the noted deficiencies. (Doc. No. 29.) However, the Court subsequently granted Dallo Co. and Parents leave to file their SACC, notwithstanding the prior order. (Doc. No. 46.) Progressive opposed the motion and fully briefed the issues on the merits, but never argued the additional proposed grounds in the proposed SACC exceeded the scope of the Court's prior order. The Court granted Dallo Co. and Parents leave to file the SACC, cognizant of the prior order and with full knowledge of the contents of the proposed SACC. The Court tacitly approved the scope of the amendment and found it did not violate previous orders. Accordingly, Progressive's argument on this point is without merit.

**II. Breach of Contract Claims**

Jonathan alleges that Progressive breached the Policy by: (1) unreasonably failing to acknowledge and pay a clearly covered claim; (2) failing to investigate the right to coverage prior to initially denying the claim; (3) requiring Jonathan to litigate coverage when coverage was clear; and (4) in the alternative, if the Court grants Jonathan's request to reform the contract to provide coverage

for Jonathan's use of the BMW, Progressive has breached the reformed contract. (Counterclaim ¶ 93.)

Dallo Co. and Parents allege that Progressive breached the Policy by: (1) unreasonably failing to acknowledge and pay a clearly covered claim; (2) accepting Dallo Co. and Parents' abandonment of coverage and paying indemnity on behalf of Jonathan only, but then asserting a reimbursement claim against Dallo Co. and Parents; (3) failing to acknowledge the different positions of the different insured parties; (4) failing to investigate the right to coverage prior to initially denying the claim; (5) failing to acknowledge clear conflicts of interest between the different insured parties and between itself and the insured parties; (6) trying to force admissions out of Dallo Co. and Parents by withholding Cumis counsel; (7) requiring Dallo Co. and Parents to litigate coverage when coverage is clear; (8) and offering policy limits to the Burnett Family under the reservation of rights when no policy limit demand had been made, thereby setting an unreasonably high floor for negotiations. (SACC, Doc. 47, ¶¶ 125(a)-(h).)  Furthermore, Dallo Co. and Parents allege that if the contract is reformed, Progressive will have breached the reformed contract. (SACC ¶ 126.)

***A. Do Blue Ridge and Buss Require the Dismissal of the Counterclaimants' Contract Claims in Their Entirety?***

    i.    Parties' Arguments

Progressive argues that it has no contract liability as a matter of law because it is pursuing a Blue Ridge claim for reimbursement and has not withheld any benefits.  Progressive asserts the Counterclaimants have been unjustly enriched because Progressive was not paid any premium to defend the Counterclaimants from uncovered claims.  Progressive argues that no contract liability can arise because it has paid all benefits due and is merely suing to recoup those benefits.

The Counterclaimants argue that Progressive has no immunity under the facts and, alternatively, that Progressive's interpretation violates the policy underlying insurance law.

    ii.    Analysis

Progressive is correct with respect to the portions of the claims alleging that Progressive's reservation of rights and subsequent reimbursement action is a breach of contract.  California law instructs insurers to not deny coverage when coverage is in doubt; instead the insurer is advised to take up the defense and reserve its rights.  See Buss v. Superior Court, 16 Cal. 4th 35 (1997).  The insurer

is not to "gamble with the insured's financial security," but pay settlement demands within the limits of coverage. <u>Communal v. Traders & Gen. Ins. Co.</u>, 50 Cal. 2d 654 (1958). An insurer is entitled to recoup settlement payments if it is later determined that the underlying claims were not covered under the policy. <u>Blue Ridge Ins. Co. v. Jacobsen</u>, 25 Cal. 4th 489 (2001); <u>Buss</u>, 16 Cal. 4th at 35. By offering this qualified defense under a reservation of right, the insurer has met its obligation to furnish a defense. <u>Blue Ridge</u>, 25 Cal. 4th at 497. Furthermore, by accepting the insurer's defense under these circumstances, the insured has accepted this condition. <u>Id.</u>

Jonathan expressly accepted Progressive's representation; therefore, he accepted the qualified defense as a condition of the Policy. Jonathan admits that he accepted Progressive's representation during the second mediation session and that Progressive paid a settlement on his behalf. (Countercl. ¶¶ 53-57.) Furthermore, Jonathan does not allege the policy prohibits a defense under a reservation of rights. Therefore, Jonathan accepted the reservation of right when he accepted Progressive's representation and cannot now claim the reservation is a breach of contract. Accordingly, the Court **DISMISSES** the portions of Jonathan's breach of contract claim that rely upon this theory. (Countercl. 49, ¶¶ 93(a), 93(c).)

Although Dallo Co. and Parents rejected Progressive's representation, the portion of their claim alleging Progressive breached the Policy by seeking reimbursement should also be dismissed. Progressive offered to provide a qualified defense under a reservation of right. Under <u>Blue Ridge</u>, this discharged their obligation to defend. <u>Blue Ridge</u> explicitly held that an insurer has a right to offer a qualified defense and later seek reimbursement for an allegedly uncovered claim. <u>Blue Ridge</u>, 25 Cal. 4th. at 497. Furthermore, Dallo Co. and Parents do not allege that the Policy prohibited a defense under a reservation of rights. Accordingly, the Court **DISMISSES** the portions of Dallo Co. and Parents' breach of contract claim that rely upon this theory (SACC ¶¶ 125(a),(b),(g)).

However, the Counterclaimants plead theories for breach of contract that do not directly stem from the reservation of rights. These claims need to be addressed individually.

***B. Did the Counterclaimants Sufficiently Plead that Progressive Breached the Policy by Failing to Reasonably Investigate?***

    i.    <u>Parties' Arguments</u>

1  The Counterclaimants allege that Progressive breached the Policy by failing to reasonably investigate coverage prior to initially denying the claim.

Progressive argues that the Counterclaimants fail to allege how the initial coverage decision was unreasonable.

ii.  Analysis

There are four elements in the prima facie case for a breach of contract: "(1) the contract; (2) Plaintiff's performance; (3) Defendant's breach; (4) Damage to the plaintiff." McDonald v. John P. Scripps Newspaper, 210 Cal. App. 3d 100, 104 (1989). The dispute centers on whether the allegations made by the Counterclaimants regarding Progressive's handling of their claims sufficiently allege a breach of the insurance contract.

A failure to reasonably investigate can be the basis for a breach of contract action. California law requires an insurer to investigate all claims promptly. Cal. Ins. Code § 790.03(h)(3). This investigation must be made reasonably and fairly. Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713 (2007). An insurer who rejects a claim without a reasonable investigation may be liable for a tortious breach of the covenant of good faith and fair dealing. Id. In their pleadings, the Counterclaimants allege that Progressive's investigation was unreasonable because the company failed to take statements from the insured parties or wait for answers to questions it had previously posed. (Counterclaim ¶ 39.) Progressive provides no authority stating that this failure to take statements or await answers is per se reasonable. Absent such authority, the Counterclaimants have stated a claim upon which relief can be granted in paragraph 93(b) of the Counterclaim and paragraph 125(d) of the Second Amended Counterclaim. Therefore, the Court **DENIES** Progressive's motion regarding the failure to investigate claim of the Counterclaimants' breach of contract causes of action.

*C. Did Dallo Co. and Parents Sufficiently Plead that Progressive Breached the Policy by Failing to Provide Independent Counsel and by Offering a Settlement at the Policy Limit?*

i.  Parties' Arguments

Dallo Co. and Parents allege that they had a right to independent counsel arising from two conflicts of interest. First, counsel independent of Jonathan was allegedly necessary because Jonathan

1  had an interest in seeing Dallo Co. and Parents held liable for the tort of negligent entrustment.
2  Second, counsel independent from Progressive was necessary because of one of the theories of
3  coverage in the Burnett Lawsuit.

4  Progressive argues that they did provide independent counsel and dispute whether they had
5  an obligation to provide this counsel.

6     ii.    <u>Analysis</u>

7  As an initial matter, Progressive had no duty to defend prior to the filing of the Burnett
8  Lawsuit. It is well settled that a liability insurer has no duty to defend until the insured has been
9  actually sued in a lawsuit. <u>Foster-Gardner, Inc. v. National Union Fire Ins. Co.</u>, 18 Cal. 4th 857, 880-
10 881 (1998). This is because the duty to defend must be determined in the first instance by "comparing
11 the allegations of the complaint with the terms of the policy." <u>Waller v. Truck Ins. Exchange</u>, 11 Cal.
12 4th 1, 25 (1995). Therefore, Progressive's obligation to defend the Counterclaimants only potentially
13 arose when the complaint was filed on October 10, 2006  (SACC ¶ 44, Counterclaim ¶ 41.) Claims
14 that Progressive failed to provide counsel before that date are not valid.

15 Furthermore, the claim that Progressive failed to supply independent counsel is not supported
16 by the allegations of Dallo Co. and Parents. With respect to the "refusal" to provide independent
17 counsel after October 10, 2006, Dallo Co. and Parents admit that counsel independent from both
18 Jonathan and Progressive was provided to them before the second mediation. (SACC ¶ 72.)
19 Progressive hired a lawyer for Jonathan, a lawyer for Dallo & Co., Inc., and a lawyer for Michael and
20 Mona Dallo. Dallo Co. and Parents rejected this representation to take advantage of another insurance
21 policy with a higher policy limit. (SACC ¶ 73.) Furthermore, the allegation that Progressive "refused"
22 to provide independent counsel is not supported by the letters quoted in the SACC. In quoted portions
23 of letters sent by Progressive, the company did not refuse to provide counsel, but rather asked Mr.
24 Semerdjian to clarify why independent counsel was necessary. (SACC ¶ 54.) Dallo Co. and Parents
25 do not allege that providing the independent counsel before the second mediation was unreasonable
26 or in violation of any of the Policy's provisions.

27 Dallo Co. and Parents have failed to allege how the negotiation and settlement of the Burnett
28 Lawsuit were breaches of the Policy. Dallo Co. and Parents allege that Progressive offered the Policy

1 limit during settlement, which set an unreasonable floor for negotiation. They do not allege that the
2 Policy required Progressive to settle the Burnett Lawsuit for anything less than the Policy limit. They
3 also do not claim that the Policy required Progressive to consider the interests of Dallo Co. and
4 Parents when settling a suit on behalf of Jonathan. Furthermore, Dallo Co. and Parents fail to cite any
5 authority that would require Progressive to consider a client's settlement interests when making a
6 settlement on behalf of another client. This claim, therefore, fails to state a claim upon which relief
7 can be granted.

8 Accordingly, the Court **GRANTS** Progressive's motion to dismiss with regard to the
9 allegations contained in subparagraphs 125(c), (e), (f), and (h) of the Second Amended Counterclaim.

10 **III. The Bad Faith Claims of Dallo Co. and Parents**

11 i. Parties' Arguments

12 Dallo Co. and Parents allege the same breaches in their implied covenant of good faith and fair
13 dealing cause of action as they did in their breach of contract cause of action. (SACC, ¶¶ 132(a)-(h).)

14 Progressive argues Dallo Co. and Parents do not allege any additional facts to support their bad
15 faith claim that Progressive did not diligently acknowledge its defense and indemnity obligations.

16 ii. Analysis

17 Progressive is partially correct. There are at least two requirements to establish breach of the
18 implied covenant of good faith and fair dealing: (1) benefits due under an insurance policy must have
19 been withheld and (2) the reason for withholding the benefits must have been unreasonable or without
20 proper cause. Preciado, 135 Cal. App. 4th at 446-47. For the reasons set forth in the above breach
21 of contract analysis, the claims contained in subparagraphs 132 (a), (b), (c), (e), (g), (h) of the Second
22 Amended Counterclaim fail to allege that Progressive withheld any policy benefits.

23 Furthermore, Dallo Co. and Parents fail to allege a bad faith withholding of independent
24 counsel in subparagraph 132(f) of the SACC because, as discussed above, they do not allege any
25 withholding of independent counsel.

26 However, the claim that Progressive breached the covenant of good faith by failing to
27 reasonably investigate survives. Progressive argues that the SACC fails to allege how the initial
28 coverage decision was unreasonable. As previously noted, an insurer who rejects a claim without a

1  reasonable investigation may be liable for a tortuous breach of the covenant of good faith and fair
2  dealing. Id. Dallo Co. and Parents allege (1) Progressive withheld the benefit of the reasonable
3  investigation of a policy claim and (2) the reason for withholding this benefit was improper.
4  Therefore, this Court **GRANTS** Progressive's motion to dismiss Dallo Co. and Parents' bad faith
5  claim with regard to the claims contained in subparagraph 125(a), (b), (c), (e), (f), (g), (h) of the
6  Second Amended Counterclaim. The Court further **DENIES** Progressive's motion with regard to the
7  alleged bad faith failure to investigate claim, contained in SACC subparagraph 125(d).

**IV. Allegations Based on the Requested Contract Reformation**

9  The Counterclaimants request the Court reform the Policy to provide coverage for Jonathan's
10  use of the BMW if the Court finds coverage was not provided in the contract as written. (Countercl.
11  ¶ 80; SACC ¶ 110.) The Counterclaimants move for this reformation pursuant to California Civil
12  Code section 3399, et seq. and base the claim upon Michael Kennedy's alleged representation that the
13  Progressive Policy would provide full, substitute coverage for Jonathan's use of the BMW.
14  Progressive has not moved to dismiss the reformation cause of action, but challenges any claim
15  alleging Progressive breached a reformed contract or made a bad faith breach of a reformed contract.

16     i.     Parties' Arguments

17  Progressive argues that the Counterclaimants must wait until after the contract has actually
18  been reformed before they can bring an action for breach of a reformed contract or bad faith breach
19  of a reformed contract. Progressive cites R&B Auto Center, Inc. v. Farmers Group, Inc., 140 Cal.
20  App. 4th 327, 353-354 (2006).

21  The Counterclaimants argue that Progressive's interpretation misrepresents the law and would
22  unduly waste judicial resources.

23     ii.    Analysis

24  The case law and prudential considerations support the Counterclaimants' arguments in part.
25  R&B Auto held that equity required rejecting a bad faith breach of contract claim based on a potential
26  reformation in that particular case, but did not address whether this conclusion applied to a breach of
27  contract claim. Id. at 353-354. Furthermore, the R&B Auto court recognized that a breach of contract
28  action could arise from a reformation of the contract. Id. at 339, n. 11. If the Court finds later in this

1 litigation the contract should be reformed pursuant to the request of the Counterclaimants, then
2 Counterclaimants could assert a claim for breach of the reformed contract. Dismissing this claim
3 would force the Counterclaimants to wait until the Court reformed the contract and then bring a
4 second suit to recover for breach. This would be unduly repetitive and inefficient.

5 Regarding the bad faith breach of a reformed contract claim, Dallo Co. and Parents do not
6 specifically allege a bad faith claim based on the reformed contract. Nowhere in the Second Amended
7 Counterclaim do Dallo Co. and Parents allege that Progressive breached the implied covenant of good
8 faith and fair dealing as to a reformed contract. Accordingly, the issue is not before the Court and the
9 Court will not entertain further argument pertaining to this claim.

10 Therefore, the Court **DENIES** Progressive's motion to dismiss the breach of contract actions
11 based on the reformed contract and **GRANTS** Progressive's motion to dismiss the bad faith breach
12 of contract action based on the reformed contract.

13 **V. Intentional Infliction of Emotional Distress Claims of Dallo Co. and Parents**

14 I. Parties' Arguments

15 Progressive argues Dallo Co. and Parents fail to allege that Progressive acted outrageously.
16 According to Progressive, at most Dallo Co. and Parents allege that the benefits promised were
17 delayed or delivered conditionally.

18 Dallo Co. and Parents argue that Progressive abused a position of authority or a relationship
19 that gave it real or apparent power to affect Dallo Co. and Parents' interests.

20 ii. Analysis

21 There are four elements of a prima facie case for the tort of intentional infliction of emotional
22 distress: (1) outrageous conduct by the defendant; (2) the defendant intended to cause or recklessly
23 disregarded the probability of causing emotional distress; (3) the plaintiff suffered severe or extreme
24 emotional distress; and (4) the defendant's outrageous conduct actually and proximately caused the
25 emotional distress. Ross v. Creel Printing & Publishing Co., 100 Cal. App. 4th 736, 744-45 (2002).
26 To support a claim for intentional infliction of emotional distress against an insurer, the plaintiff must
27 allege the conduct exceeded all bounds usually tolerated by a decent society and was especially
28 calculated to cause mental distress of a very serious kind. Christensen v. Superior Court, 54 Cal. 3d

1  868, 904-05 (1991). Mere "delay or denial of insurance claims is not sufficiently outrageous to state
2  a cause of action for intentional infliction of emotional distress." <u>Coleman v. Republic Indem. Ins.
3  Co.</u>, 132 Cal. App. 4th 403, 417 (2005). Behavior may be considered outrageous if a defendant: (1)
4  abuses a relationship or position which gives him power to damage the plaintiff's interest; (2) knows
5  the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably
6  with the recognition that the acts are likely to result in illness through mental distress. <u>Hailey v.
7  California Physicians' Service</u>, 158 Cal. App. 4th 452, 474 (2007).

8  Dallo Co. and Parents allege Progressive: (1) reserved its rights under <u>Blue Ridge</u> to force
9  Dallo Co. and Parents to pay a portion of Progressive's liability; (2) refused to address the differences
10 in equities between the Counterclaimants; (3) failed to advise Dallo Co. and Parents of their right to
11 withdraw from coverage; (4) failed to provide appropriate defense counsel; (5) withheld defense
12 counsel in hopes of tricking Dallo Co. and Parents into making statements which Progressive could
13 use against them in subsequent coverage litigation; (6) leveraged and used against them, Michael and
14 Mona Dallo's love for their son; and (7) acknowledged that Dallo Co. and Parents had abandoned
15 coverage and remained silent until after Dallo Co. and Parents paid $250,000 before asserting
16 Progressive's reimbursement action.

17 Accepting Dallo Co. and Parents' allegations as true, the intentional infliction of emotional
18 distress claim fails on both the outrageousness and intent prong. As to the outrageousness prong,
19 Dallo Co. and Parents have, at most, pled that contract benefits have been withheld or delayed. Under
20 <u>Coleman</u>, this delay or denial of insurance is not sufficiently outrageous to state a cause of action for
21 intentional infliction of emotional distress. Dallo Co. and Parents cite no authority supporting the
22 position that the alleged conduct is outrageous or an abuse of power to damage a plaintiff's interest.
23 Furthermore, Dallo Co. and Parents fail to allege that this conduct was done with the intent to cause
24 severe emotional distress or with reckless disregard as to the probability of causing emotion distress.
25 Therefore, the Court GRANTS Progressive's motion to dismiss the intentional infliction of emotional
26 distress claims of Dallo Co. and Parents.

27 **VI. California Business & Professions Code Section 17200 Claims**

28 I.     Parties' Arguments

1  Progressive argues that the claim fails on the merits because it does not identify any unlawful
2 or unfair act.
3  Dallo Co. and Parents counter that they have alleged that Progressive failed to investigate the
4 underlying reformation issue and secretly rejected Dallo Co. and Parents disavowal of coverage while
5 fraudulently appearing to have accepted and acted on the disavowal.
6  ii.  Analysis
7  California law prohibits unfair competition, defined as "any unlawful, unfair or fraudulent
8 business act or practice." Cal. Bus. & Prof. Code § 17200. Because section 17200 is written in the
9 disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2)
10 unfair acts or practices, and (3) fraudulent acts or practices. Cel-Tech Communications, Inc. v. Los
11 Angeles Cellular Telephone Co., 20 Cal.4th 163, 180 (1999). To find a practice unlawful, the practice
12 must be in violation of an existing law. Id. Dallo Co. and Parents have not alleged that Progressive
13 has committed any acts in violation of any law.
14  To find a practice "unfair," a court may not apply purely subjective notions of fairness. Id. at
15 184. Any finding of unfairness "must be tethered to some legislatively declared policy or proof of
16 some actual or threatened effect on competition." 13 Witkin, Summary of Cal. Law (10th ed.) Equity,
17 § 107, p. 412. Dallo Co. and Parents fail to allege that Progressive's conduct is "tethered" to any
18 legislative policy or threatened effect on competition.
19  A practice is "fraudulent" if members of the public are likely to be deceived." Bank of the
20 West v. Superior Court, 2 Cal. 4th 1254, 1267 (1992). Dallo Co. and Parents have not alleged that
21 members of the public are likely to be deceived. Additionally, any alleged fraud is specific to Dallo
22 Co. and Parents, not to the public at large. Therefore, this Court GRANTS Progressive's motion to
23 dismiss Dallo Co. and Parents Section 17200 claims.

24  **CONCLUSION**

25  For the reasons set out above, this Court **DISMISSES WITHOUT LEAVE TO AMEND** the
26 portion of Jonathan's breach of contract claim contained in subparagraphs 93(a) and (c) of his
27 Counterclaim. The Court **DISMISSES WITHOUT LEAVE TO AMEND** the portion of Dallo Co.
28 and Parents' breach of contract cause of action contained in subparagraphs 125 (a)-(c) and (e)-(h) of

1  the SACC; the bad faith breach cause of action except for subparagraph 132(d) of the SACC; the
2  intentional infliction of emotion distress cause of action; and the California Business & Professions
3  Code section 17200 cause of action.
4      The Court **DENIES**, Progressive's motion to dismiss the Counterclaimants' (1) breach of
5  contract claims based upon (a) a failure to investigate and (b) breach of the potentially reformed
6  contract and the (2) Dallo Co. and Parents bad faith claim based upon the failure to investigate.

**IT IS SO ORDERED**

**DATED: September 10, 2008**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**